UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 2 9 2018

---

Asia TV USA, Ltd.,

                Plaintiff,

    –v–

Total Cable USA LLC, et al.,

                Defendants.

---

16-cv-6873 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    This case involves allegations by Plaintiff Asia Today USA, Ltd. ("Asia Today") that

Defendants Total Cable USA LLC ("Total Cable LLC"), Lalon TV, Inc. ("Lalon TV"), Ahmodul

Barobhuiya, and Habibur Rahman infringed or contributed to the infringement of ATUL's

copyrights and trademarks in certain television programming by distributing it without a license.

ATUL seeks a preliminary injunction—including an injunction against the fraudulent transfer of

assets—against all defendants and seeks to dismiss two of the counterclaims from the answer

filed by Total Cable LLC, Barobhuiya, and Rahman. The Court does not deem it necessary to

hold oral argument on those motions[1], and, for the reasons that follow, grants the motion to

dismiss the counterclaims and grants in part the motion for a preliminary injunction.

---

[1] The Court notes that in a letter dated December 28, 2017, ATUL requested that its motion for a
preliminary injunction "be scheduled for hearing." Dkt. No. 131. The Court understands that
letter to be a request for oral argument and not a request for an evidentiary hearing. *See* Dkt. No.
129 (ATUL using the same language to request oral argument on its motion to dismiss certain
counterclaims); Dkt. No. 131 (ATUL stating that the motion "has not yet been scheduled for
argument"); Dkt. No. 132 (Defendants opposing ATUL's December 28, 2017 letter and
interpreting ATUL's request as one for oral argument on the preliminary injunction motion);
Dkt. No. 133 (ATUL replying to Defendants' letter that "ask[ed] the Court to deny oral
argument" on the preliminary injunction motion and explaining that ATUL "requested oral
argument at the time of filing the motion and the reply"). To the extent that the December 28,

1

## I. BACKGROUND

### A. Facts

ATUL distributes cable television programming. It contends that it has the exclusive right to distribute in the United States content from an Indian company called Zee Entertainment Enterprises Limited ("ZEE") and that Defendants are infringing on this right by distributing ZEE content themselves. *See* Dkt. No. 80 ("Gupta Affirmation") at ¶¶ 3, 17-19.

According to ATUL, it received the rights to the ZEE copyrights and trademarks from Asia Today, Ltd. ("Asia Today"), which received them from ZEE. *See* Dkt. No. 79 ("ATUL Memo") at 6; Gupta Affirmation at ¶¶ 3-5. Service mark and trademark registrations show that the mark "Z" is owned by Asia Today. Dkt. No. 80, Ex. B ("Registrations"). The mark was registered as a service mark on October 6, 2015, and as a service mark and a trademark on August 2, 2016. *Id.* Its first use was in June 2011. *Id.* The registrations also show that the mark "ZEE" was registered by ZEE TV USA, Inc. as a service mark on May 30, 2006, and as a trademark and a service mark by Asia Today on August 11, 2016. *Id.* Its first use was in May 1998. *Id.*

---

2017 letter could be construed as a request for an evidentiary hearing, the request came three months after the motion was fully briefed and was thus untimely. In any event, the Court would deny the request, as an evidentiary hearing is not necessary to resolve the motion. *See Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 512 (2d Cir. 2005) (observing that an evidentiary hearing is not required when "disputed facts are amenable to complete resolution on a paper record"); *Wall v. Constr. & Gen. Laborers' Union*, 80 F. App'x 714, 716 (2d Cir. 2003) ("[A]n evidentiary hearing was not necessary to dispose of plaintiffs' motion because appellants had failed to identify witnesses who would testify as to the alleged harm, and thus could not demonstrate that an evidentiary hearing would help resolve any factual issues."); *Maryland Cas. Co. & Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) ("[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." (quoting *Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir. 1989)).

In February 2010, ATUL entered a distribution services agreement with Asia Today. The agreement states that Asia Today owns the rights to distribute "the entire suite of ZEE premium cable television channels," appoints ATUL as the exclusive distributor of that content, and gives ATUL the right to enforce Asia Today's copyrights and trademarks. Dkt. No. 80, Ex. A ("Addendum to Programming Distribution Services Agreement"); *see* Dkt. No. 88 ("Supplemental Gupta Affirmation") at ¶ 3; Dkt. No. 88, Ex. A ("Programming Distribution Services Agreement"); Dkt. No. 118, Ex. A ("Programming Distribution Services Agreement, Addendum, and Extension").

In March 2014, ATUL entered an agreement with Total Cable LLC, a cable service provider, to allow Total Cable LLC to distribute ZEE content. *See* ATUL Memo at 8; Dkt. No. 80, Ex. C ("ATUL/ Total Cable LLC Agreement"). Defendant Ahmodul Barobhuiya, the CEO of Total Cable LLC, signed that agreement. ATUL/ Total Cable LLC Agreement. At some point thereafter, Total Cable LLC failed to make timely payments to ATUL. Defendant Habibur Rahman engaged in several email conversations with ATUL on behalf of Total Cable LLC regarding Total Cable LLC's inability to make payments. *See* Dkt. No. 80, Ex. G ("Emails between ATUL and Total Cable LLC"). ATUL and Total Cable LLC ultimately negotiated a settlement of Total Cable LLC's debt and agreed to a new distribution deal, which Barobhuiya signed. Gupta Affirmation at ¶ 12; Dkt. No. 80, Ex. D ("Settlement and Release Agreement"). However, Total Cable LLC again failed to make timely payments. *See* Gupta Affirmation at ¶ 13. Accordingly, in April and July 2016, ATUL sent notices of the breach to Total Cable LLC. *Id.* at ¶ 14. In the July 2016 letter, ATUL ordered Total Cable LLC to cease and desist from transmitting ZEE content. Dkt. No. 80, Ex. E ("Notices of Breach"). Total Cable LLC responded to those letters on August 15, 2016, acknowledging that it had been unable to make

timely payments and requesting amendments to the settlement agreement. Dkt. No. 80, Ex. F ("8/15/16 Total Cable LLC Letter"). On December 3, 2016, Total Cable LLC filed for bankruptcy. *See* Dkt. No. 82, Ex. M.

ATUL insists that despite Total Cable LLC's failure to make payments and ATUL's cease and desist letter, Total Cable LLC continues to distribute ZEE content. In June 2016, an ATUL paralegal, Bharat Sarda, subscribed to Total Cable LLC to monitor the content it was distributing. Dkt. No. 81 ("Sarda Affirmation") at ¶¶ 1, 3. On March 13, 2017, Sarda took photographs of ZEE content being broadcast by Total Cable. *Id.* at ¶ 8; *see* Dkt. No. 81, Ex. K ("Sarda Photographs"). The photographs show ZEE content displayed on a TV connected to cable box bearing the label "Total Cable." *See* Sarda Photographs. Similarly, Nicolas Anagnostopoulos, the Program Manager for a company that provides services to protect media content from piracy, has provided photographs of ZEE content that was made available through a Total Cable box from February through April 2017. *See* Dkt. 95 ("Anagnostopoulos Affirmation") at ¶¶ 1, 5.

Defendants counter that Total Cable LLC has ceased to operate since it dissolved in May 2016. *See, e.g.*, Dkt. No. 86, Ex. 3 ("Barobhuiya Affidavit") at ¶ 22. Barobhuiya contends that the invoices Sarda received were from Lalon TV, not Total Cable LLC, and that the cable box in the photographs is not a Total Cable LLC cable box. Barobhuiya Affidavit at ¶¶ 20-21. The president of Lalon TV, Shahinul Karim, believes that the cable box displayed in the photographs appears to be a Lalon TV cable box, though he insists that the images from the box are not images from Lalon TV. Dkt. No. 86, Ex. 4 ("Karim Affidavit") at ¶ 4.

ATUL argues that Lalon TV is one and the same as Total Cable LLC, ATUL Memo at 3, but Defendants insist that Lalon TV Inc. d/b/a Total Cable is a different entity from Total Cable

USA LLC, Dkt. No. 86, Ex. 1 ("Bhatia Affirmation") at ¶ 3. Total Cable LLC was registered as a limited liability company in October 2013 and, according to New York Department of State records, was dissolved in May 2016. Dkt. No. 82, Ex. L ("Total Cable LLC Registration"). By contrast, Lalon TV was incorporated as a corporation in August 2009 and is listed as still active in New York state records. Dkt. No. 82, Ex. Q ("Lalon TV Registration"). Nevertheless, there is some evidence of a relationship between Total Cable LLC and Lalon TV. Lalon TV assumed the name "Total Cable" in January 2012. Dkt. No. 86, Ex. 2 at 2 ("Assumed Name Certificate"). When Sarda subscribed to Total Cable LLC, he received a bill from "Total Cable/Lalontv Inc." *See* Dkt. No. 81, Ex. H ("Total Cable/Lalontv Bill"). Similarly, Sarda received an invoice from "Lalon TV Inc Dba Total Cable." Dkt. No. 81, Ex. I ("Lalon Tv Inc Dba Total Cable 12/16 Invoice"). Moreover, Barobhuiya is the CEO of both Total Cable LLC and Lalon TV, and the address for service of process is the same for both companies. *Compare* Total Cable LLC Registration, *with* Lalon TV Registration; *see* ATUL/ Total Cable LLC Agreement. In addition, Rahman, who emailed frequently with ATUL as a representative of Total Cable LLC, *see* Emails between ATUL and Total Cable LLC, is the CTO of Lalon TV, *see* Dkt. No. 86, Ex. 2 at 7 ("Broadcast Solutions Agreement") at 9. Finally, in November 2015, Lalon TV made a wire transfer to ATUL to settle some of Total Cable LLC's debt. *See* Dkt. No. 88, Ex. B ("11/2015 Wire Transfer").

Although Defendants dispute that Total Cable LLC and Lalon TV are the same company and that the photographs submitted by ATUL show content provided by Total Cable LLC or Lalon TV, *see, e.g.*, Dkt. No. 104 ("Barobhuiya Affirmation in Opposition") at ¶ 4, it is undisputed that Lalon TV distributes ZEE content, *see id.* at ¶ 7. According to Defendants, however, Lalon TV has a valid license to distribute ZEE content. Defendants contend that in

September 2009 Lalon TV entered an agreement with a company called Broadcast Solutions to distribute that content. Bhatia Affirmation at ¶ 5; Broadcast Solutions Agreement.

**B. Procedure**

ATUL filed a complaint in August 2016 against Total Cable LLC, Ahmodul Barobhuiya, and Habibur Rahman alleging, inter alia, federal trademark and copyright infringement and seeking injunctive relief and damages. *See* Dkt. No. 1. In March 2017, ATUL amended its complaint to add Lalon TV as a defendant. *See* Dkt. No. 52.

On March 13, 2017, Total Cable LLC, Barobhuiya, and Rahman filed an answer to ATUL's amended complaint and asserted several counterclaims. Dkt. No. 57 ("Total Cable LLC Answer"). Relevant here, their first counterclaim emphasizes the distinct nature of each defendant. It alleges that Barobhuiya did not personally guarantee the debts of Total Cable LLC and did not treat Total Cable LLC as an extension of his personal affairs; that Rahman was not a member of Total Cable LLC; and that Total Cable LLC and the defendants are not alter egos of one another. Total Cable LLC Answer at ¶¶ 135-43. Those defendants thus request dismissal of ATUL's complaint and denial of the injunctive relief that ATUL requests. *Id.* at ¶ 144. In their third counterclaim, those defendants contend that the instant action is motivated by bad faith, has no merit, and is frivolous, and they seek an award of legal fees and expenses. *Id.* at ¶¶ 146-48.

On April 11, 2017, Defendant Lalon TV filed its answer to ATUL's amended complaint. Dkt. No. 70.

On April 21, 2017, ATUL moved for a preliminary injunction against all defendants, Dkt. No. 77, and to dismiss the first and third counterclaims in Total Cable LLC, Barobhuiya, and Rahman's answer, Dkt. No. 83. For the reasons that follow, the Court grants the motion to dismiss and partially grants the motion for a preliminary injunction.

## II.    MOTION TO DISMISS

To survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, the claimant must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). The allegations must "state a claim to relief that is plausible on its face." *Id.* at 570. A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### A.  First Counterclaim

Here, ATUL contends that the first counterclaim in the March 13, 2017, answer should be dismissed because it contains no factual allegations as to ATUL's conduct and instead consists only of denials. Dkt. No. 84 ("ATUL MTD Memo") at 3-4.

The Court agrees. The first counterclaim barely mentions ATUL and focuses instead on describing the defendants' roles and relationships. *See* Total Cable LLC Answer at ¶¶ 135-44. The statements in the first counterclaim are simply denials and explanations rather than allegations about ATUL. Accordingly, the first counterclaim in the March 13, 2017, answer is dismissed.

### B.  Third Counterclaim

As to the third counterclaim, ATUL argues that it is not clear what claim the defendants intend to make, and that, in any event, if the claim is construed as one for abuse of process or malicious prosecution, the defendants have failed to state a claim. ATUL MTD Memo at 4-8. In response to the motion to dismiss, Total Cable LLC, Barobhuiya, and Rahman do not clarify

which claim they are trying to assert. *See* Dkt. No. 68. The Court thus analyzes the counterclaim both as one for abuse of process and as one for malicious prosecution.

To prevail on an abuse of process claim in New York, the claimant must establish that the defendant (1) used a "regularly issued process, either civil or criminal," (2) had an "intent to do harm without excuse or justification," and (3) used the process "in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 499 N.E.2d 1324, 1326 (N.Y. 1984). "[T]he institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Id.* A malicious motive in bringing an action is not on its own the basis for an abuse of process claim. *Id.*

In New York, "[t]he elements of the tort of malicious prosecution of a civil action are (1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury." *Hudson Valley Marine, Inc. v. Town of Cortlandt*, 912 N.Y.S.2d 623, 625-26 (App. Div. 2010) (quoting *Castro v. East End Plastic, Reconstructive & Hand Surgery, P.C.*, 850 N.Y.S.2d 483, 485 (App. Div. 2008)); *see also Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir. 1998) (stating the elements of a malicious prosecution claim in New York).

In the third counterclaim, Total Cable LLC, Barobhuiya, and Rahman claim that the ATUL's claims are meritless and that the action was initiated in bad faith. Total Cable LLC Answer at ¶ 147. They complain that they have had to pay legal fees to defend the action. However, they do not allege that ATUL has taken any abusive action other than filing the case. The allegation that ATUL initiated this action in bad faith cannot, without more, support an abuse of process claim. *See Curiano*, 499 N.E.2d at 1326.

Furthermore, because this action is ongoing, the defendants have not alleged, and cannot allege, that the action has terminated in their favor. They have thus failed to state a claim for malicious prosecution.

To the extent that Total Cable LLC, Barobhuiya, and Rahman seek attorneys' fees as a sanction against ATUL, making such a request in a counterclaim is improper. *See* Fed. R. Civ. P. 11(c)(2).

Accordingly, the third counterclaim in the March 13, 2017, answer is dismissed.

## III. PRELIMINARY INJUNCTION

### A. Materials Considered

As an initial matter, the Court notes that both Plaintiff and Defendants submitted many documents regarding the motion for a preliminary injunction after the briefing period for the motion had ended. Nevertheless, the Court did not strike those documents but instead gave the opposing party an opportunity to respond. *See, e.g.*, Dkt. No. 102. Accordingly, the Court considers all briefs and affirmations that have been filed in support of or opposition to the motion for a preliminary injunction.

Moreover, the Court rejects Defendants' arguments that the Court should not consider the affirmations of Akhilesh Gupta and Bharat Sarda because they are not notarized. *See* Dkt. No. 86 ("Defendants' Memo") at 1. The affirmations do, however, state that they were declared under penalty of perjury. *See* Gupta Affirmation; Supplemental Gupta Affirmation; Sarda Affirmation. In support of their argument that the Court should not consider the affirmations, Defendants cite "FRCP (e)." Defendants' Memo at 1. It is not clear which rule Defendants seek to invoke. Defendants cite no other rule or statute to support their argument, and the Court is unaware of any. *Cf. Quiles v. City of New York*, 978 F. Supp. 2d 374, 382 (S.D.N.Y. 2013)

9

(explaining, at the summary judgment stage, that under 28 U.S.C. § 1746 an unsworn declaration is admissible provided it is in writing, subscribed as true under penalty of perjury, and dated). The Court thus considers the Gupta and Sarda affirmations.

Finally, ATUL argues that the Broadcast Solutions agreement has not been properly authenticated. *See* Dkt. No. 87 ("ATUL Reply") at 3 n.1. Nevertheless, given that the president of Lalon TV states in his affidavit that Lalon TV entered an agreement with Broadcast Solutions, Karim Affidavit at ¶ 5, the Court considers the agreement. However, even if the Court did not consider the agreement itself, the Court would consider Karim's sworn statement regarding the agreement. The Court's analysis thus would not change.

### B. Motion for Preliminary Injunction

ATUL seeks to preliminarily enjoin Defendants from, inter alia, accessing or transmitting ZEE content and using the marks "Z" or "ZEE." ATUL Memo at 4. In addition, ATUL requests an injunction requiring Defendants to "delete and disable access to ZEE Content" and to serve a written report swearing that they have done so, and an order preventing the fraudulent transfer of assets. *Id.* at 5.

A preliminary injunction is granted if the plaintiff establishes "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Even if a plaintiff has not demonstrated a likelihood of success on the merits, a preliminary injunction may still be granted if the plaintiff shows "a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010); *see also Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir.

10

2010) ("[A] court may issue a preliminary injunction in a copyright case only if the plaintiff has demonstrated either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor." (alteration in original) (internal quotation marks omitted)).

## C. Likelihood of Success on the Merits

ATUL argues that it is likely to prevail on its federal trademark infringement claim, its federal copyright infringement claim, its contributory infringement claim, and its New York State dilution claim.[2] *See* ATUL Memo at 13-18.

### i. Trademark

"The plaintiff in a trademark infringement action establishes a likelihood of success by showing both 1) a legal, exclusive right to the mark, and 2) a likelihood that customers will be confused as to the source of the infringing product." *Otokoyama Co. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). A certificate of registration with the United States Patent and Trademark Office is "prima facie evidence that the mark is registered and valid *(i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). When analyzing the likelihood of confusion, courts typically consider eight factors—but that analysis is unnecessary when the marks at issue are counterfeit because counterfeit marks are inherently confusing. *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005).

---

[2] In its memorandum of law in support of its motion for a preliminary injunction, ATUL states that it has a substantial likelihood of prevailing on its unfair competition claims, but its discussion focuses on the dilution claim. *See* ATUL Memo at 16-17.

Here, ATUL has shown that Asia Today had the legal, exclusive right to the marks "Z" and "ZEE" and that Asia Today licensed those rights to ATUL. ATUL has also shown that at least Lalon TV, and possibly also Total Cable LLC, continues to use those marks. *See, e.g.*, Sarda Photographs. Because the marks used are the same, there is a significant likelihood of confusion. *See Lorillard*, 478 F. Supp. at 455. Thus even if a factfinder determines that Total Cable LLC and Lalon TV are separate entities and that Total Cable LLC ceased operating in May 2016, ATUL is still likely to prevail on its trademark infringement claim against Lalon TV.

### ii. Copyright

Under 17 U.S.C. § 501(a), "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The owner "of an exclusive right under a copyright" may pursue an action "for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

ATUL alleges that Lalon TV and Total Cable LLC engaged in, and continue to engage in, direct copyright infringement by distributing ZEE content without a license to do so. *See, e.g.*, ATUL Memo at 14. Although the parties disagree about many of the factual details in this case, there is no dispute that Lalon TV distributes ZEE content or that Total Cable LLC previously distributed ZEE content under an agreement with ATUL, an agreement that Total Cable LLC repeatedly failed to comply with. *See* ATUL/ Total Cable LLC Agreement; Gupta Affirmation at ¶¶ 12-14; Karim Affidavit at ¶ 5. ATUL has thus demonstrated a strong

likelihood that the copying element of a copyright claim exists. The real question, therefore, is whether ATUL is the owner of a valid copyright in the ZEE content.

Although ATUL has provided evidence of Asia Today's ownership of "Z" and "ZEE" trademarks and service marks, *see* Registrations, it has not provided similar evidence of Asia Today's or ATUL's registration of ZEE copyrights. Instead, ATUL has provided a copy of its distribution services agreement with Asia Today, which states that Asia Today owns the rights to distribute "the entire suite of ZEE premium cable television channels," appoints ATUL as the exclusive distributor of ZEE channels, and gives ATUL the right to enforce Asia Today's copyrights. *See* Addendum to Programming Distribution Services Agreement. That evidence suggests that ATUL is the exclusive licensee of ZEE content and thus may pursue an infringement action against Defendants. However, Lalon TV has claimed that it, too, has a license to distribute ZEE content. Karim Affidavit at ¶ 5. ATUL's agreements with Asia Today and the trademark and service mark registrations in Asia Today's name strengthen ATUL's claim of ownership over the ZEE copyrights but do not prove such ownership. Having failed to provide evidence of copyright registration, ATUL has not shown that it is likely to succeed on its copyright infringement claim.

Furthermore, because ATUL insists that ZEE content is copyrighted in India, *see* ATUL Memo at 14, it is possible that Indian law should govern the ownership question—an issue that neither party has briefed. Indeed, in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998), the Second Circuit explained that the law of the state with "the most significant relationship" to the work and the parties generally applies to determine copyright ownership. *Id.* at 90. There, because the "works at issue were created by Russian nationals and first published in Russia," the court concluded that Russian law was "the appropriate source of

law to determine issues of ownership of rights." *Id.* Here, if ZEE content is created in India and first distributed in India, then Indian law may govern the copyright ownership question. However, ATUL has not shown that under Indian law it would have ownership of ZEE content. It is therefore not possible at this stage to conclude that ATUL is likely to succeed on its copyright infringement claim.

### iii. Contributory Infringement

According to ATUL, "Defendants Barobhuiya and Rahman are accessing and/or assisting Total Cable and Lalon TV, who are also assisting each other, in accessing" and distributing ZEE content. ATUL Memo at 18.

"To establish a claim for contributory copyright infringement, a plaintiff must allege that the defendant with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012) (quoting *Brought to Life Music, Inc. v. MCA Records, Inc.*, 02 CIV. 1164, 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003)). "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 118 (2d Cir. 2010) (emphasis omitted) (quoting *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1020 (9th Cir. 2001)). "[T]here can be no contributory infringement absent actual infringement." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005).

In this case, there is evidence that at least some of the Defendants knew or should have known of the alleged infringing conduct. The emails from Rahman and Barobhuiya's signature on the agreement show that Barobhuiya and Rahman were aware of the distribution agreement between ATUL and Total Cable LLC. *See* Emails between ATUL and Total Cable LLC; ATUL/

Total Cable LLC Agreement. The agreement stated that ZEE content and marks were and would remain the property of ATUL. ATUL/ Total Cable LLC Agreement at ¶ 10. Barobhuiya and Rahman also work for Lalon TV, and there is evidence of a relationship between Total Cable LLC and Lalon TV. *See, e.g.*, Thus when Lalon TV distributed ZEE content without obtaining a license from ATUL to do so, Barobhuiya, Rahman, and Total Cable LLC arguably should have known that Lalon TV was engaging in "infringing activity."

However, ATUL has not provided evidence to support its claim that any of the Defendants "induced, caused, or materially contributed to the infringing conduct of another." There is little evidence regarding the role that Barobhuiya or Rahman played in Total Cable LLC's or Lalon TV's distribution of ZEE content. Moreover, although there is evidence of a relationship between Total Cable LLC and Lalon TV, it is not clear that either "induced, caused, or materially contributed to the infringing conduct" of the other. Although ATUL insists that Total Cable LLC distributes ZEE content through Lalon TV, *see, e.g.*, ATUL Reply at 4-6, it has not provided evidence of contributory infringement beyond the existence of a relationship between Total Cable LLC and Lalon TV. At this stage, then, ATUL has not shown a likelihood of success on its contributory infringement claim.

### iv. Dilution

A claim for dilution under New York law exists when a defendant attempts to "feed[] upon the business reputation of an established distinctive trade-mark or name." *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 133 (S.D.N.Y. 1993) (alteration in original) (quoting *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir. 1993)). To prevail on a claim of dilution, a plaintiff must show "(1) that it possesses a strong mark, one which has a distinctive quality or has acquired a secondary meaning such that the

trade name has become so associated in the public's mind with the plaintiff that it identifies goods sold by that entity as distinguished from goods sold by others, and (2) a likelihood of dilution by either blurring or tarnishment." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 241 (S.D.N.Y. 2012) (quoting *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 367 (S.D.N.Y. 2009)). Blurring occurs when the defendant uses "the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product," while tarnishment arises "when the plaintiff's trademark is linked to products of shoddy quality" or is used in an "unsavory context." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994) (emphasis omitted).

Here, ATUL has alleged that the ZEE marks are well-known and highly distinctive, Gupta Affirmation at ¶ 9, and Defendants have not contested that. In addition, ATUL has shown a likelihood of dilution of the ZEE marks. It has offered photographs allegedly showing that Total Cable LLC or Lalon TV displayed ZEE marks. *See, e.g.*, Sarda Photographs. Because the marks used by Defendants appear to be the same marks to which ATUL claims ownership, and because Defendants applied the marks to the same content to which ATUL applies the marks, a likelihood of dilution exists. Accordingly, ATUL has shown a likelihood of success on its state law dilution claim.

### D. Irreparable Harm

The second preliminary injunction factor is whether ATUL would suffer irreparable harm in the absence of an injunction. "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger*, 607 F.3d at 81. "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a

loss that one should not be expected to suffer." *Id.* Although many copyright plaintiffs may be irreparably harmed absent a preliminary injunction, the Court may not presume irreparable harm and must instead consider the harm that the plaintiff would suffer if it lost on the preliminary injunction but later prevailed on the merits. *Id.* at 80, 82.

Here, ATUL stands to suffer irreparable harm in the absence of an injunction. Defendants' use of the ZEE marks may confuse consumers and cause reputational injury to ATUL, as ATUL may lose the ability to control its reputation. Similarly, ATUL's credibility and its licensing business may be damaged if Defendants continue to use marks and distribute content that ATUL claims to have an exclusive license over. Moreover, if ATUL prevails on the merits, it may have difficulty proving the loss of sales due to infringement. *See Salinger*, 607 F.3d at 81.

### E. Balance of Hardships

The third factor that the Court must consider is the balance of hardships. The Court may grant an injunction only if the balance of hardships tips in ATUL's favor. *Salinger,* 607 F.3d at 80. If ATUL shows only "a serious question going to the merits," rather than a likelihood of success, then it must show that the balance of hardships tips "decidedly" in its favor. *Metro. Taxicab Bd. of Trade*, 615 F.3d at 156.

As discussed, ATUL would suffer irreparable harm in the absence of an injunction, and it will continue to face that harm until Defendants are enjoined. By contrast, there is little evidence that Defendants would suffer any harm if an injunction were issued. Although the president of Lalon TV states that Lalon TV will suffer irreparable loss if the Court grants the requested injunction, he does not offer any details to support that statement. Karim Affidavit at ¶ 7. Instead, he states that Lalon TV does *not* receive revenue from customers for ZEE TV channels.

Karim Affidavit at ¶ 8. If Lalon TV does not receive revenue from distributing ZEE content and if, as Defendants insist, Total Cable LLC no longer operates, then Defendants cannot suffer much injury, if any, from an injunction.

### F. Public Interest

Finally, the Court must consider whether an injunction is in the public interest. *Salinger,* 607 F.3d at 82.

Neither Plaintiff nor Defendants have highlighted any public interest that would be disserved by granting an injunction. To the extent that the public interest is implicated, it is served by granting an injunction to prevent public confusion.

### G. Scope of Injunction

Given the foregoing, the Court grants in part ATUL's motion for a preliminary injunction.

Because ATUL is likely to prevail on its trademark infringement and dilution claims and would suffer irreparable harm in the absence of an injunction, and because the balance of hardships, including the public interest, weighs in ATUL's favor, the Court prohibits Defendants from using the registered marks "Z" or "ZEE" or any other confusingly similar mark in connection with the sale, advertisement, marketing, or promotion of any goods or services.

However, because ATUL has not shown a likelihood of success on its copyright infringement claim, the Court denies the request to enjoin Defendants from otherwise transmitting or distributing ZEE content and the request to require Defendants to delete and disable access to ZEE content, destroy materials advertising ZEE content, and report on their compliance with that requirement.

ATUL contends that an order preventing the fraudulent transfer of assets is also necessary because Defendants have previously sought to avoid judgment by concealing their business activities and relationships. Specifically, ATUL argues that Defendants have continued to operate Total Cable LLC while it was under "dissolved" status and have used Total Cable LLC and Lalon TV interchangeably, and that Total Cable LLC filed for bankruptcy to avoid judgment in this case. *See* ATUL Memo at 2-3, 11, 23-24.

The Court denies ATUL's request to prohibit Defendants from, inter alia, withdrawing, transferring, or disposing of any assets or property. To the extent that ATUL is seeking prejudgment attachment of Defendants' assets, ATUL has failed to demonstrate that it is entitled to an order of attachment.

Under Federal Rule of Civil Procedure 64, litigants may seek an order of attachment pursuant to the law of the state where the district court sits. New York law provides that a plaintiff may obtain an order of attachment if he shows that (1) there is a cause of action; (2) it is "probable" he will succeed on the merits; (3) the defendant, "with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted property, or removed it from the state or is about to do any of these acts"; and (4) the amount demanded is greater than the amount of all counterclaims known to the plaintiff. N.Y. C.P.L.R. 6212(a), 6201(3). Attachment is a "harsh" remedy, so these factors "must be strictly construed . . . in favor of" the defendant. *Michaels Elec. Supply Corp. v. Trott Elec. Inc.*, 647 N.Y.S.2d 839, 840 (App. Div. 1996).

Assuming arguendo that the other elements are satisfied, ATUL has failed to show that Defendants "with the intent to defraud [their] creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, ha[ve] assigned, disposed of, encumbered,

or secreted property, or removed it from the state or [are] about to do any of these acts." The August 2016 letter from Total Cable LLC, 8/15/16 Total Cable LLC Letter, shows that Total Cable LLC did not completely cease operations after reporting its status as "dissolved" in May 2016, and the overlap in name and employees between Total Cable LLC and Lalon TV suggests that there is some relationship between the two companies. However, ATUL has not provided evidence of Defendants' "intent to defraud" creditors or intent to "frustrate the enforcement of a judgment." Moreover, although Defendants stated that Total Cable LLC "had to file [for bankruptcy] to avoid any law suits," Defendants' Memo at 9, it is not clear that Defendants were referring to the infringement issues in this lawsuit, rather than the lawsuits that might have arisen from Total Cable LLC's inability to make required payments as a result of its bankruptcy.

Accordingly, the Court denies ATUL's request to enjoin Defendants from withdrawing, transferring, or disposing of assets or property.

## IV.    SEALING REQUESTS

ATUL requests that two exhibits in supports of its motion for a preliminary injunction—the Affiliation Agreement with Total Cable (ATUL/ Total Cable LLC Agreement), Dkt. No. 80, Ex. C, and the subsequent Settlement and Release Agreement and Covenant Not to Sue (Settlement and Release Agreement), Dkt. No. 80, Ex. D—be filed under seal. ATUL argues that if filed publicly, the ATUL/ Total Cable LLC Agreement would expose confidential financial terms and the Settlement and Release Agreement would violate the confidentiality provision in that document. However, ATUL also recognizes that it may be necessary to unseal potions of at least the ATUL/ Total Cable LLC Agreement in the future and to file redacted versions publicly. Accordingly, the Court denies the request to seal both documents in full.

Instead, within three weeks of the date of this Order, ATUL shall submit proposed redactions to the Court.

## V.    CONCLUSION

For the foregoing reasons, the first and third counterclaims asserted by Total Cable LLC, Barobhuiya, and Rahman are dismissed. This resolves Docket Number 83. In addition, the Court grants in part ATUL's request for a preliminary injunction. Defendants are enjoined from using the registered marks "Z" or "ZEE" or any other confusingly similar mark in connection with the sale, advertisement, marketing, or promotion of any goods or services. This resolves Docket Number 77. Within three weeks of the date of this Order, ATUL shall submit proposed redactions of the ATUL/ Total Cable LLC Agreement and the Settlement and Release Agreement. The case management conference remains scheduled for April 20, 2018, at 3pm.

SO ORDERED.

Dated: March 29, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge